**FILIPP SERGEEVICH ADONYEV,**
      21 Cagodan Gardens, Flat L
      London SW3 2RW
      United Kingdom

                            *Plaintiff,*

            v.

**ANTONY BLINKEN,**
      in his official capacity as
      Secretary of the United States Department
      of State
      2201 C Street, N.W.
      Washington, D.C. 20520

      and

**THE UNITED STATES DEPARTMENT OF
STATE,**
      2201 C Street, N.W.
      Washington, D.C. 20520

      and

**AARON P. FORSBERG,**
      in his official capacity as Director of the
      United States Department of State, Bureau
      of Economic and Business Affairs, Office
      of Economic Sanctions Policy and
      Implementation
      2201 C Street, N.W.
      Suite 4657
      Washington, D.C. 20520


**THE UNITED STATES DEPARTMENT OF
STATE, OFFICE OF ECONOMIC
SANCTIONS POLICY AND
IMPLEMENTATION,**
      2201 C Street, N.W.
      Suite 4657
      Washington, D.C. 20520

Case No. _____

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

and

**JANET YELLEN**,
     in her official capacity as Secretary of the
     United States Department of the Treasury
     1500 Pennsylvania Avenue, N.W.
     Washington, D.C. 20220

and

**THE UNITED STATES DEPARTMENT OF
THE TREASURY**,
     1500 Pennsylvania Avenue, N.W.
     Washington, D.C. 20220

and

**BRADLEY SMITH**,
     in his official capacity as Director of the
     United States Department of the Treasury,
     Office of Foreign Assets Control
     1500 Pennsylvania Avenue, N.W. – Annex
     Washington, D.C. 20220

and

**THE UNITED STATES DEPARTMENT OF
THE TREASURY, OFFICE OF FOREIGN
ASSETS CONTROL**,
     1500 Pennsylvania Avenue, N.W. – Annex
     Washington, D.C. 20220

*Defendants.*

Plaintiff, Filipp Sergeevich Adonyev ("Plaintiff"), by and through the undersigned

counsel, brings this Complaint for Declaratory and Injunctive Relief against Defendants, the

United States Department of State ("State"), its Secretary, Antony Blinken, the United States

Department of State, Office of Economic Sanctions Policy and Implementation ("ESPI"), its

Director, Aaron P. Forsberg, the United States Department of the Treasury ("Treasury"), its

Secretary Janet Yellen, the United States Department of the Treasury, Office of Foreign Assets

Control ("OFAC"), and its Director, Bradley Smith (hereinafter collectively "Defendants") and in support of his complaint states as follows:

## INTRODUCTION

1.      This lawsuit arises from Defendants' arbitrary and capricious designation of Plaintiff as a Specially Designated National ("SDN") and Defendants' continued and unlawful failure to adjudicate Plaintiff's request to rescind Plaintiff's designation as an SDN and remove his name from the List of Specially Designated Nationals and Blocked Persons ("Petition for Removal").

2.      On January 26, 2023 Plaintiff was sanctioned under Executive Order 14024, entitled Blocking Property with Respect to Specified Harmful Foreign Activities of the Government of the Russian Federation ("E.O. 14024") for being the "adult child" of Sergei Nikolaevich Adonyev ("Adonyev"), a "person whose property and interests in property are blocked pursuant to" Section 1(a)(ii) or (iii) of E.O. 14024. *See* Fact Sheet, United States Department of the Treasury, *Actions to Counter Wagner and Degrade Russia's War Efforts in Ukraine* (January 26, 2023), https://www.state.gov/actions-to-counter-wagner-and-degrade-russias-war-efforts-in-ukraine/ ("Fact Sheet").

3.      While the Fact Sheet suggests Treasury designated Plaintiff, along with eight other individuals and fourteen entities for their putative "status as government officials. . . involvement in the extended networks of designated persons, and/or for being a part of Russia's military industrial complex" the Fact Sheet fails to make any such connections vis-à-vis Plaintiff. It appears Treasury designated Plaintiff based on his biology alone.

4.      Shocked by the designation, on February 10, 2023, Plaintiff requested a copy of the evidentiary file underlying OFAC's designation as well as a written explanation from OFAC

summarizing its rationale. Plaintiff's request for his evidentiary file remains outstanding as of the date of this Complaint. *See* Exhibit 1, Letter dated, February 10, 2023, to OFAC.

5.     On June 26, 2023, Plaintiff submitted a Petition for Removal ("Petition") to Defendant OFAC. Pursuant to 31 CFR §501.807, Plaintiff's Petition presented both argument and evidence as to why Plaintiff's designation as a Specially Designated National ("SDN") should be revoked. *See* Exhibit 2, Petition for Removal from OFAC Specially Designated Nationals List, dated June 26, 2023.

6.     Plaintiff's Petition informed OFAC that he has lived in London since 2008, Adonyev and Plaintiff's mother separated in 2014, and that Plaintiff has been entirely supported by his mother since 2016. While Plaintiff loves his father and has a healthy relationship with him, he likewise informed OFAC that he has no substantive knowledge of Adonyev's companies, has never held a position at any of Adonyev's companies, has never attended a business meeting or business-related call with Adonyev, and or discussed Adonyev's professional life.

7.     As further support for his Petition, Plaintiff provided a memorandum from his mother's divorce attorney, Camilla Baldwin, out of London. The memorandum explained that from 2016 to 2020, Adonyev paid a monthly stipend to cover Plaintiff's mother's personal expenses and the expenses of his children, including Plaintiff. However, in 2020, Adonyev made a lump sum payment to Plaintiff's mother to resolve all future familial financial obligations. The memorandum therefore demonstrated Plaintiff was financially independent from Adonyev starting in 2020, or three years before his designation.

8.     To delay adjudicating Plaintiff's Petition or to fish for information that may warrant designation on other grounds, ESPI sent Plaintiff a questionnaire on October 4, 2023 ("Questionnaire"). *See* Exhibit 3, Letter dated October 4, 2023 from The United States

Department of State , Office of Economic Sanctions Policy and Implementation. The Questionnaire demanded that Plaintiff disclose (i) any interest he holds in any financial accounts in the United States; (ii) any interest in real estate or property in the United States; (iii) any interest in any companies registered or incorporated in the United States; (iv) whether Plaintiff has been the subject of any legal proceedings, investigations, indictments, arrests, warrants for arrests, or convictions in any jurisdiction worldwide; (v) all sources of Plaintiff's current income; and (vi) all business or financial contacts between Plaintiff and any persons previously or currently on the SDN list, among other categories of information.

9.     Plaintiff responded to the Questionnaire on December 29, 2023 ("Questionnaire Response"). *See* Exhibit 4, Letter dated December 29, 2023, entitled RUSSIA-EO14024-34439. Plaintiff's Questionnaire Response informed ESPI that Plaintiff (i) does not have any accounts or real estate in the United States; (ii) does not have any interest, directly or indirectly, in any companies registered or incorporated in the United States; (iii) has never been subject to a legal proceeding in any jurisdiction worldwide, including the United States; (iv) is a student working towards his law degree and does not have a source of income outside the support provided by his mother; (v) visited Russia twice since Russia's invasion of Ukraine to visit his grandmother who is in a pre-coma state; and (vi) has never engaged in any business relations or financial contacts with any persons previously or currently on the SDN list. Plaintiff reiterated he does not maintain, and has never maintained, a financial, business, or professional relationship with Adonyev, and averred he does not expect to receive any future gifts or support from Adonyev.

10.     In short, Plaintiff's Petition and Questionnaire Response belie the basis of Plaintiff's designation and demand that Plaintiff's designation be revoked.

11.     Defendants continued designation of Plaintiff in the face of the foregoing evidence is contrary to OFAC's stated policy of imposing sanctions "not to punish, but to bring about a positive change in behavior." If Plaintiff cannot be removed from the SDN List upon demonstration that he maintains no financial, professional, or business relationships with Adonyev and has never been involved in Adonyev's extended network, there is nothing he can do to end his status as a sanctioned individual. Plaintiff cannot change his biology.

12.     Assuming arguendo Defendants' designation of Plaintiff is valid, Defendants still have acted arbitrarily and capriciously in their failure to adjudicate Plaintiff's June 26, 2023 Petition. Defendants have likewise acted arbitrarily and capriciously in their designation and treatment of Plaintiff, which is at odds with similar designations by Defendants pursuant to Section 1(a)(v) of E.O. 14024.

13.     Since April 15, 2021, the date which E.O. 14024 became effective, the sanctions imposed by Defendants pursuant to Section 1(a)(v) have generally been based on more than just biology. Without assessing the correctness and reasonableness of such designations, it is obvious that these other designated children have allegedly been involved in their parent's business, benefitted from their parent's position, benefitted from ill-gotten gains of their parent's position, benefitted from their parent's close relationship with Russian authorities, or themselves been sanctioned independent of their status as an "adult child" of an SDN.

14.     For example, in February 2022, OFAC sanctioned the adult son of Aleksandr Vasilievich Bortnikov, the Director of the Federal Security Service of the Russian Federation and a permanent member of the Security Council of the Russian Federation. Bortnikov's son, Denis Aleksandrovich Bortnikov, born 1974, is the Deputy President of Russian-state owned financial institution VTB Bank Public Joint Stock Company ("VTB Bank") and a Chairman of the VTB

Bank Management Board. Bortnikov's son was sanctioned under the "leader" provision of E.O. 14024, but also sanctioned independently under the "adult child" provision contained in Section 1(a)(v). *See* Press Release, United States Department of the Treasury, *U.S. Treasury Imposes Immediate Economic Costs in Response to Actions in the Donetsk and Luhansk Regions* (February 22, 2022), https://home.treasury.gov/news/press-releases/jy0602.

15.     In February 2022, OFAC sanctioned the adult son of Sergei Borisovich Ivanov ("Ivanov"), the Special Representative for Environmental Protections and "reportedly one of Putin's closest allies." Ivanov's son, Sergei Sergeevich Ivanov, born 1980, is the current CEO of Russian state-owned diamond mining company Alrosa and a board member of Gazprombank. On the same day Sergei Ivanov was sanctioned, OFAC identified Gazprombank as subject to prohibitions pursuant to Directive 3 under E.O. 14024. *See* Press Release, United States Department of the Treasury, *U.S. Treasury Announces Unprecedented & Expansive Sanctions Against Russia, Imposing Swift and Severe Economic Costs* (February 24, 2022), https://home.treasury.gov/news/press-releases/jy0608.

16.     In March 2022, OFAC sanctioned the adult children of Dmitry Sergeevich Peskov ("Peskov"), the spokesperson for the President of the Russian Federation. OFAC noted that the Peskov family members, including adult children, Nikolay Peskov, born in 1990, and Elizaveta Dmitriyevna Peskova, born in 1998, "live luxurious lifestyles that are incongruous with Peskov's civil servant salary and are likely built on the ill-gotten wealth of Peskov's connections to Putin." *See* Press Release, United States Department of the Treasury, *Treasury Sanctions Kremlin Elites, Leaders, Oligarchs, and Family for Enabling Putin's War Against Ukraine* (March 11, 2022), https://home.treasury.gov/news/press-releases/jy0650.

17.     In August 2022, OFAC sanctioned the adult child of Kirill Aleksandrovich Dmitriev ("Dmitriev"), a "close ally of Putin and the CEO of RDIF and JSC RDIF." Dmitriev's daughter Natalya Valeryevna Popova, born in 1981, is the First Deputy Director of the Non-State Development Institute Innopraktika, a technology company in Russian. Natalya Popova was sanctioned pursuant to E.O. 14024, for allegedly having operated in the technology sector of the Russian Federation economy, but was also sanctioned independently under the "adult child" provision. *See* Press Release United States Department of the Treasury, *Treasury Sanctions Elites and Companies in Economic Sectors that Generate Substantial Revenue for the Russian Regime* (August 2, 2022), https://home.treasury.gov/news/press-releases/jy0905.

18.     In September 2023, OFAC sanctioned Mkrtich Okroevich Okroyan ("Okroyan"), for being or having been a leader, official, senior executive officer, or member of the board of directors of two Russian aerospace companies (Soyuz and Balashikha) that built engines for cruise missiles and provided aviation equipment to Russia's Ministry of Defense. Okroyan's adult children, Anna Mkrtichevna Okroyan ("Anna"), born in 1994, and Andranik Mkrtichovich Okroyan ("Andranik"), born in 1990, were members of the Soyuz board of directors. Anna and Andranik were designated for operating in the aerospace sector of the Russian Federation economy. They were also separately designated for being the adult children of Okroyan. *See* Press Release United States Department of the Treasury, *With Wide-Randing New Sanctions, Treasury Targets Russian Military-Linked Elites and Industrial Base* (September 14, 2023), https://home.treasury.gov/news/press-releases/jy1731.

19.     In November 2023, OFAC designated Salman Soipovich Zakriev ("Zakriev"), the First Deputy Chairperson of the Parliament of the Chechen Republic, for being or having been a leader within the Government of the Russian Federation. Zakriev's adult son, Yakub

Salmanovich Zakriev ("Yakub"), born in 1990, was sanctioned the same day for being a spouse or adult child of Zakriev. OFAC noted Yakub was the head of a "European company's Russian subsidiary after the Russian Federation seized the Russia-based assets" at the time he was designated. *See* Press Release, United States Department of the Treasury, *Taking Additional Sweeping Measures Against Russia* (November 2, 2023), https://www.state.gov/taking-additional-sweeping-measures-against-russia/.

20.     The common denominator of the above "adult child" designations is not that each is simply a child of an SDN, but that each also allegedly exhibits some additional conduct and/or independent evidence of support, making him or her remarkable to Defendants. By contrast, there are no facts relative to Plaintiff that make him worthy of Defendants' attention.

21.     Under the binding precedent of this Court, Defendants are required to treat similarly situated parties similarly or provide a reasonable explanation as to why a party is receiving disparate treatment pursuant to the same administrative process.

22.     The moment Defendants took agency action against Plaintiff, certain legal protections attached to Plaintiff and circumscribed Defendants' actions by way of the Administrative Procedure Act (5 U.S.C. 551, *et seq.*) ("APA") and the United States Constitution. For instance, Defendants must provide for due process and equal protection to ensure that persons affected by their actions have a meaningful opportunity to respond to them, and that similarly situated parties are treated in a similar manner.

23.     As of the date of this Complaint, Defendants have failed to provide Plaintiff a copy of the underlying evidentiary file, a substantive response to Plaintiff's requests for timely adjudication, or a reasoned explanation as to why Defendants are treating Plaintiff disparately.

Defendants have instead issued a questionnaire asking Plaintiff to provide information unrelated to reasons why Plaintiff was originally designated.

24.     Defendants' failure to rescind Plaintiff's improper designation or otherwise adjudicate Plaintiff's Petition has caused and continues to cause Plaintiff significant personal and financial harm. Plaintiff will continue to suffer these harms for as long as Defendants are permitted to unreasonably delay the adjudication of Plaintiff's Petition and/or Plaintiff's improper designation remains in place. Plaintiff therefore brings this action to remedy the harm suffered by him at the hands of Defendants and to challenge the process that triggered the same.

25.     Plaintiff asserts three claims. First, Defendants' failure to render a decision on Plaintiff's Petition constitutes unreasonable delay in violation of the APA. Second, Defendants' failure to render a decision with respect to Plaintiff's Petition despite evidence that the bases for Plaintiff's designation terminated prior to Plaintiff's designation constitutes arbitrary and capricious agency action under the APA. Finally, Defendants' treatment of Plaintiffs in a manner disparate to similarly situated parties constitutes arbitrary and capricious agency action not in accordance with law in violation of the APA.

## JURISDICTION AND VENUE

26.     This action arises under the United States Constitution, the International Emergency Economic Powers Act, 50 U.S.C. §1701, *et seq.*, and APA. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

27.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and Fed. R. Civ. P. Rule 57. This Court may grant injunctive relief pursuant to Fed. R. Civ. P. Rule 65.

28.     Venue is proper in the District of Columbia as this is the district in which the events giving rise to the complaint occurred and in which Defendants are located. *See* 28 U.S.C. §§ 1391(b) and (e).

**THE PARTIES**

29.      Plaintiff is citizen of the United Kingdom. He has lived outside the Russian Federation since 2008 and currently resides in London with his mother. Plaintiff is a student pursuing a career as a solicitor. He has been financially supported by his mother since 2016.

30.     Defendant, United States Department of State, is a cabinet-level governmental department, led by the Secretary of State, that manages the United States' foreign policy and relations. The State Department is located at 2201 C. Street, N.W., in Washington, D.C.

31.     Defendant, Antony Blinken, is the Secretary of the United States Department of State. Mr. Blinken is sued in his official capacity.

32.     Defendant, the Bureau of Economic and Business Affairs, Office of Economic Sanctions Policy & Implementation, is a federal agency that is responsible for developing and implementing foreign policy-related sanctions adopted to counter threats to national security. ESPI is located at 2201 C. Street, N.W., Suite 4657, in Washington, D.C.

33.     Defendant, Aaron P. Forsberg, is the Director of the Office of Economic Sanctions Policy and Policy. Mr. Forsberg is sued in his official capacity.

34.     Defendant, United States Department of the Treasury, is a cabinet-level governmental department, led by the Secretary of the Treasury. In addition to its core objective of promoting economic prosperity and ensuring the financial security of the United States, the Treasury Department implements and administers economic sanctions against foreign threats to

the United States. The Treasury Department is located at 1500 Pennsylvania Avenue, N.W., in Washington, D.C.

35.     Defendant, Janet Yellen, is the Secretary of the Treasury. Ms. Yellen is sued in her official capacity.

36.     Defendant United States Department of the Treasury, Office of Foreign Assets Control is a financial intelligence and enforcement agency of the United States Department of the Treasury. OFAC administers and enforces economic and trade sanctions in support of United States national security and foreign policy objectives. OFAC is located at 1500 Pennsylvania Avenue, N.W.-Annex, in Washington, D.C.

37.     Defendant, Bradley Smith is the Director of OFAC. Mr. Smith is sued in his official capacity.

**FACTUAL ALLEGATIONS**

A.     *The Circumstances Giving Rise to Executive Order 14024*

38.     The International Emergency Economic Powers Act ("IEEPA") endows the President of the United States with certain powers to deal with an unusual and extraordinary threat to national security upon declaration of a national emergency. 50 U.S.C. § 1701. These powers include the power to impose economic sanctions on foreign entities and individuals. *See* 50 U.S.C. §§ 1702 – 1703.

39.     On April 15, 2021, President Joseph R. Biden invoked the powers delegated to the President under the IEEPA and declared a national emergency predicated upon activities of the Russian Government ("Declaration").

40.     The activities giving rise to President Biden's Declaration included Russia's:

a. Efforts to undermine the conduct of free and fair democratic elections and democratic institutions in the United States and its allies and partners;

b. Engagement in and/or facilitation of malicious cyber-enabled activities against the United States and its allies and partners;

c. Fostering and use of transnational corruption to influence foreign governments;

d. Pursuit of extraterritorial activities targeting dissidents or journalists;

e. Efforts to undermine security in countries and regions important to United States national security; and

f. Violation of well-established principles of international law, including respect for the territorial integrity of states (collectively "Activities"). *See* 86 Fed. Reg. 73, 20249 (April 19, 2021).

41.    To mitigate the harm caused by the Activities to the national security, foreign policy, and economy of the United States, President Biden issued Executive Order 14024, entitled Blocking Property with Respect to Specified Harmful Foreign Activities of the Government of the Russian Federation ("E.O. 14024").

42.    The intent behind the order and related sanctions policy was clear upon issuance. E.O. 14024 imposed sweeping sanctions with respect to any individual or entity determined by the Secretary of the Treasury, in consultation with the Secretary of State:

a. To operate or have operated in the technology sector or the defense and related materiel sector of the Russian Federation economy, or any other sector of the Russian Federation economy;

b. To be responsible for or complicit in, or have directly or indirectly engaged or attempted to engage in any of the Activities giving rise to the E.O. 14024;

c. To be or have been a leader, official, senior executive officer, or member of the board of directors of the Government of the Russian Federation; an entity that has or whose members have engaged in any Activity; or an entity whose property and interests are blocked pursuant to E.O. 14024;

d. To be a spouse or adult child of any person whose property and interests in property are blocked pursuant to E.O. 14024; or

e. To have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of any of the Activities or any person whose property and interests in property are blocked pursuant to E.O. 14024 to further the Activities giving rise to E.O. 14024. Id. at 20249-20250.

43. In his 2022 State of the Union address, President Biden explained the sanctions were part of a broader U.S. policy of "inflicting pain on Russia and supporting the people of Ukraine. . . [by] cutting off Russia's largest banks from the international financial system. . . [and] choking off Russia's access to technology that will sap its economic strength and weaken its military for years to come." The White House Briefing Room, *Remarks of President Joe Biden – State of the Union Address As Prepared for Delivery* (March 1, 2022), https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/03/01/remarks-of-president-joe-biden-state-of-the-union-address-as-delivered/#:~:text=We%20are%20inflicting%20pain%20on,now%20enforcing%20powerful%20economic%20sanctions.

44.     President Biden addressed "the Russian oligarchs and corrupt leaders who have bilked billions of dollars off [Russia's] violent regime" (which Plaintiff is not) in the same speech issuing two words of warning - "no more." Id.

45.     Section 8 of E.O. 14024 authorized the "Secretary of the Treasury, in consultation with the Secretary of State. . . to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by the IEEPA, as may be necessary to carry out the purposes of" the executive order. Id. at 20252.

46.     Section 8 of E.O. 14024 equally empowered the Secretary of the Treasury to redelegate any of the aforementioned functions within Treasury, if consistent with applicable law. Id.

B.      *Plaintiff's Designation Under E.O. 14024*

47.     On January 26, 2023, Plaintiff was designated by  the Secretary of State as a sanctioned individual under E.O. 14024 for being the "adult child" of Adonyev, a "person whose property and interests in property are blocked pursuant to subsection (a)(ii) or (iii) of E.O. 14024."  88 Fed. Reg. 17913, 17914.

48.     State published the Fact Sheet on its website that same date asserting Plaintiff and eight others were designated for their putative "status as government officials. . . involvement in the extended networks of designated persons, and/or for being a part of Russia's military industrial complex." *See* Fact Sheet, United States Department of State, *Actions to Counter Wagner and Degrade Russia's War Efforts in Ukraine* (January 26, 2023), https://www.state.gov/actions-to-counter-wagner-and-degrade-russias-war-efforts-in-ukraine/. The Fact Sheet failed, however, to make any such connections vis-à-vis Plaintiff.

49.     Plaintiff was designated based on his biology alone.

### C. *OFAC's Delisting Procedures*

50.    The delisting procedures contained in 31 C.F.R. § 501.807 are promulgated by Defendant OFAC and are applicable to parties seeking the rescission of their designation under E.O. 14024 by virtue of 31. C.F.R. § 587.101 ("Delisting Procedures").

51.    The Delisting Procedures authorize sanctioned persons to seek administrative reconsideration of their designation or assert that the circumstances resulting in the designation no longer apply and seek to have their designation rescinded. 31 C.F.R. § 501.807.

52.    The Delisting Procedures state that petitioners may submit arguments or evidence that the person believes establishes that an insufficient basis exists for the designation. Petitioners may also propose remedial steps on the petitioner's part, such as resignation of persons from positions in a blocked entity, which the petitioner believes would negate the basis for designation by causing a change in circumstances.

### D. *Plaintiff's Petition for Removal*

53.    On February 10, 2023 Plaintiff submitted a request for information ("RFI") to OFAC related to his designation as a SDN.

54.     The purpose of the RFI was to request a copy of the evidentiary memorandum, and any other relevant documents, identifying and supporting the factual and legal reasons for OFAC's designation of Plaintiff and/or outlining OFAC's reasoning and conclusions in support of its designation.

55.    On June 26, 2023, Plaintiff filed a Petition with OFAC seeking the removal of his designation under E.O. 14024 and the deletion of his name from the SDN List based on insufficient evidence.

56.     Plaintiff's Petition informed OFAC that he has lived in London since 2008, Adonyev and Plaintiff's mother separated in 2014, and that Plaintiff has been entirely supported by his mother since 2016. Plaintiff likewise informed OFAC that while he loves his father and has a healthy relationship with him, he has no substantive knowledge of Adonyev's companies, has never held a position at any of Adonyev's companies, has never attended a business meeting or business-related call with Adonyev, has never discussed Adonyev's professional life with Adonyev, and therefore has never been involved in Adonyev's extended network.

57.     As further support for his Petition, Plaintiff provided OFAC a memorandum from his mother's divorce attorney, Camilla Baldwin, out of London. The memorandum explained that from 2016 to 2020, Adonyev paid a monthly stipend to cover Plaintiff's mother's personal expenses and the expenses of his children, including Plaintiff. However, in 2020, Adonyev made a lump sum payment to Plaintiff's mother to resolve all his future financial obligations. The memorandum therefore demonstrated Plaintiff was financially independent from Adonyev starting in 2020, or three years before his designation.

58.     OFAC confirmed receipt of Plaintiff's Petition on June 28, 2023, assigning it case number: RUSSIA-EO14024-34439. *See* Exhibit 5, Email dated June 28, 2023 from OFAC.

E.      *ESPI's October 4, 2023 Questionnaire*

59.     On October 4, 2023, ESPI issued Plaintiff a questionnaire seeking information largely without any reference, explicit or implicit, to the circumstances which resulted in Plaintiff's E.O. 14024 designation.

60.     Instead, ESPI asked Plaintiff to disclose and/or provide:

a.  Copies of Plaintiff's birth certificate, passports, registrations, national identity cards, and visas.

b. Any interest Plaintiff holds in any financial accounts in the United States, including the names and address of the financial institutions, the type of account, and the account numbers.

c. Any interest Plaintiff holds in any real estate or property in the United States, and if any, the addresses and length of ownership.

d. Any interest Plaintiff holds, directly or indirectly, in any companies registered or incorporated in the United States, and if any, the incorporation information and all related documentation.

e. If Plaintiff has ever been, or is currently, the subject of any legal proceeding (including but not limited to civil and criminal investigations, indictments, arrests, warrants for arrests, or convictions) in any jurisdiction worldwide, including the United States, and if any, a description of the legal proceedings, their status, and all supporting official documentation and any responses to proceedings filed by Plaintiff or on his behalf, including translations as necessary.

f. If Plaintiff maintains a financial, business, or professional relationship with Adonyev, apart from his indirect financial relationship via monthly payments through his mother pursuant to the post-nuptial agreement.

g. All sources of Plaintiff's current sources of income, including holdings, ownership, and business relationships.

h. Any "public stance" Plaintiff has taken against the Government of Russia, including any documentation of any steps Plaintiff has taken to distance himself from Russia's actions in Ukraine.

i.  Detailed information regarding all business or financial contacts, including those involving any provision of goods or services that Plaintiff has or had, directly or indirectly, with any persons previously or currently on the SDN list, and if any such contacts terminated, documentary evidence of such termination.

j.  If Plaintiff expects to receive additional future gifts or support from Adonyev.

61.    ESPI also invited Plaintiff to "provide any additional information" he deemed appropriate that could assist ESPI in the review of his Petition.

62.    Plaintiff responded to the questionnaire on December 29, 2023. Plaintiff's Questionnaire Response informed ESPI that Plaintiff (i) does not have any accounts or real estate in the United States; (ii) does not have any interest, directly or indirectly, in any companies registered or incorporated in the United States; (iii) has never been subject to a legal proceeding in any jurisdiction worldwide, including the United States; (iv) is a student working towards his law degree and does not have a source of income outside the support provided by his mother; (v) visited Russia twice since Russia's invasion of Ukraine to visit his grandmother who is in a pre-coma state; and (vi) has never engaged in any business relations or financial contacts with any persons previously or currently on the SDN list. Plaintiff reiterated that he does not maintain, and has never maintained, a financial, business, or professional relationship with Adonyev, and does not expect to receive any future gifts or support from Adonyev.

63.    Plaintiff also advised that he has distanced himself from his Russian roots, particularly by choosing not to return to Russia, except in case of need a limited number of times, such as seeing his elderly grandparents, who cannot leave Russia which has been their home all their lives.

64.     On January 8, 2024, ESPI confirmed receipt of the Questionnaire Response. *See* Exhibit 6, Email dated January 8, 2024 from ESPI. In its response, ESPI advised State will follow up with Plaintiff in the event ESPI had more questions or when ESPI completes its adjudication of the Petition. Id.

F.     *Defendants' Continued Delay*

65.     Receiving no response to Plaintiff's RFI for almost a year, Plaintiff contacted ESPI on January 29, 2024 to request a status. *See* Exhibit 7, Email dated January 29, 2024 to ESPI.

66.     ESPI responded on January 30, 2024, advising Plaintiff his RFI was "currently under review" but that ESPI was "not in a position to provide a time estimate for the completion of the administrative record." *See* Exhibit 8, Email dated January 30, 2024 from ESPI.

67.     When Plaintiff did not receive a response to his Petition or RFI three months later, Plaintiff sent ESPI a second request for status and timely adjudication. *See* Exhibit 9, Email dated March 28, 2024 to ESPI.

68.     ESPI responded to Plaintiff that same date advising Plaintiff's Petition was "currently under review" but that ESPI was "not in a position to provide a time estimate for the completion of [its] review." As it relates to the RFI, ESPI advised "State is processing this request, but cannot provide an estimated time for its completion." *See* Exhibit 10, Email dated March 28, 2024 from ESPI.

69.     On May 22, 2024, Plaintiff sent ESPI another request for status and timely adjudication. *See* Exhibit 11, Email dated May 22, 2024 to ESPI.

70.     ESPI responded that same date advising Plaintiff's "request for reconsideration and for the evidentiary file. . . are currently being processed" but that ESPI was "not in a position

to provide a time estimate for the completion of [its] work on these two matters." *See* Exhibit 12, Email dated May 22, 2024 from ESPI.

71.    Plaintiff contacted ESPI a fourth time on June 28, 2024 to once again request a status update and timely adjudication of both his Petition and RFI. *See* Exhibit 13, Email dated June 28, 2024 to ESPI.

72.    ESPI responded to Plaintiff the same date with the same stock answer ESPI provided previously, namely that State is working to respond to Plaintiff's Petition, but is "not in a position to provide a time estimate for the completion of [its] work" and "State is processing [Plaintiff's RFI] but cannot provide an estimate for its completion." *See* Exhibit 14, Email dated June 28, 2024 from ESPI.

G.    *Harm to Plaintiff*

73.    Defendants' actions have caused, and continue to cause, Plaintiff significant personal and financial harm.

74.    Plaintiff is deprived of the opportunity to complete his law studies and to become a solicitor. In September 2022, he began a law conversion course in the United Kingdom, the essential part of which is a traineeship program. Plaintiff successfully completed the main course, and should have started his traineeship but was refused. The Solicitors Regulation Authority made it clear that because of his sanctions status and without a bank account in the United Kingdom, Plaintiff would not be able to sign a training contract, and as a consequence, to receive a solicitor's license.

75.    Apart from his law degree, Plaintiff is unable to pursue his dream of a career in the film industry. Despite his numerous efforts, professional competitions and experience (he already acted as a production assistant in "Bebia, à mon seul désir" (2021)), no major film

studio wants to have anything to do with a person without a bank account in the United Kingdom and with SDN-status. Thus, after being designated, Plaintiff contacted Warner Brothers UK and received a definitive refusal based on his 'circumstances'.

76.  Foreign banks have blocked or otherwise restricted Plaintiff's accounts and/or prevented him from opening additional accounts.

77.  Plaintiff is unable to obtain credit in the form of credit cards or otherwise and cannot participate in any meaningful economic activity owing to his designation – making him entirely reliant upon his mother for support.

78.  Plaintiff has also been ostracized both inside and outside his community and his reputation has been permanently stained as a direct result of Defendants' improper designation. Even those friends and acquaintances who have not turned their backs on Plaintiff constantly specify what restrictions there are on interaction with him in terms of US sanctions. All of this makes Plaintiff uncomfortable, especially since he has never committed any acts that would violate the laws of the country in which he resides, as well as the laws of other countries, including the US.

79.  Plaintiff's everyday life is severely hindered due to the impossibility to use common services and applications from US-nexus providers, including Apple, Amazon, Netflix, Google, etc. This list is endless and covers all areas of life. The sanctions status of Plaintiff is the only reason why these providers refuse to supply goods and services to him and blocked his accounts.

80.  Finally, Plaintiff is deprived of qualified medical care because he is unable to obtain health insurance from any company with US nexus. For example, the BUPA Health Clinic, which had insured Plaintiff prior to his designation, has refused to continue to provide

services to him because of his sanctions status. Plaintiff cannot even obtain ordinary medical services such as medical tests. In September 2023, Plaintiff requested a DNA test from a medical company based in the Netherlands, but received a refusal to release the results with reference to the impossibility of including his name in the results list.

81.     Defendants' continued delay in adjudicating Plaintiff's Petition – despite possessing undisputed evidence that Plaintiff never had any financial, business, or professional relationships with Adonyev, has never been directly or indirectly involved "in the extended network" of Adonyev, or benefitted from the same will continue to have these devastating effects on Plaintiff personally and financially so long as his Petition goes unanswered, and he remains on the SDN List.

**LEGAL CLAIMS**

**<u>COUNT I</u>**

DEFENDANTS' FAILURE TO RENDER A DECISION WITH RESPECT TO PLAINTIFF'S PETITION CONSTITUTES UNREASONABLE DELAY IN VIOLATION OF THE APA

82.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

83.     Agencies are required to "conclude a matter presented to it. . . [w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b).

84.     Under the APA, reviewing courts are required to compel agency action that is unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

85.     Despite having evidence in its possession that belies the basis for Plaintiff's designation, Defendants have unreasonably delayed a decision on Plaintiff's Petition for over fourteen months. In that time Defendants have neither rescinded Plaintiff's designation nor

deleted his name from the SDN List. This failure to render a decision on Plaintiff's Petition constitutes unreasonable delay in violation of the APA.

## COUNT II

DEFENDANTS' FAILURE TO RENDER A DECISION WITH RESPECT TO PLAINTIFF'S PETITION DESPITE UNDISPUTED EVIDENCE THAT BELIES THE BASIS FOR PLAINITFF'S DESIGNATION CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE APA

86.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

87.     The APA requires agencies to "conclude a matter presented to it. . . [w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b).

88.     Under the APA, reviewing courts are required to compel agency actions unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

89.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or *failure to act*." 5 U.S.C. §706(1) (emphasis added). Courts are required to hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

90.     Defendants' failure to render a decision on Plaintiff's delisting petition for fourteen months, despite having evidence in their possession that belies the basis for Plaintiff's designation, is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the APA.

## **COUNT III**

DEFENDANTS' DESIGNATION OF PLAINTIFF IN A MANNER DISPARATE TO
SIMILARLY SITUATED PARTIES CONSTITUTES ARBITRARY AND CAPRICIOUS
AGENCY ACTION AND AGENCY ACTION NOT IN ACCORDANCE WITH LAW IN
VIOLATION OF THE APA

91.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the

allegations in all preceding paragraphs.

92.     The APA requires agencies to "conclude a matter presented to it. . . [w]ith due

regard for the convenience and necessity of the parties or their representatives and within a

reasonable time." 5 U.S.C. § 555(b).

93.     Under the APA, reviewing courts are required to compel agency actions

unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

94.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order,

license, sanction, relief, or the equivalent or denial thereof, or *failure to act*." 5 U.S.C. §706(1)

(emphasis added). Courts are required to hold unlawful and set aside agency action, findings, and

conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law. 5 U.S.C. § 706(2)(A).

95.     Federal administrative agencies must treat similarly situated parties similarly or,

in the alternative, provide a reasoned explanation as to why they are being treated differently

than other similarly situated persons.

96.     As demonstrated above, Defendants designation of individuals under Section

1(a)(v) of E.O. 14024 is generally based on more than just biology. These other designated

children have allegedly been involved in their parent's business, benefitted from their parent's

position, benefitted from ill-gotten gains of their parent's position, benefitted from their parent's

close relationship with the regime at issue, or themselves been sanctioned independent of their

status as an "adult child" of an SDN. These individuals must usually exhibit some additional conduct and/or independent evidence of support, making him or her remarkable to Defendants.

97.     As demonstrated above, there are no such facts relative to Plaintiff that make him worthy of Defendants' attention, and yet Defendants sanctioned him anyway.

98.     Defendants have failed to provide any explanation for why adjudication of Plaintiff's Petition is being delayed in the absence of any aggravating factors, explain why Plaintiff was designated in a manner dissimilar to others designated pursuant to Section 1(a)(v) or E.O. 14024, or otherwise provide Plaintiff an explanation for the unreasonable delay in adjudicating Plaintiff's Petition.

99.     Defendants' designation of Plaintiff in the absence of any aggravating factors, including Defendants' failure to provide an explanation to Plaintiff for doing so, constitutes arbitrary and capricious agency action, an agency action not in accordance with law in violation of the APA. This failure also directly contradicts the "willingness to remove persons from such lists consistent with the law".

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.  Set aside Defendants' actions as unlawful and declare and/or order Defendants' rescission of Plaintiff's designation under E.O. 14024 and the deletion of his name from OFAC's SDN List;

B.  Order Defendants to issue a written, reasoned decision on Plaintiff's pending Petition for Removal;

C.  Order Defendants to provide Plaintiff his evidentiary file and administrative record;

D. Grant an award to Plaintiff of costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, *et seq.*, and any other applicable provision of law; and

E. Such other and further relief as the Court may deem proper.

Dated: September 18, 2024          Respectfully submitted,

/s/ *Luis A. Reyes*
Luis A. Reyes, Bar No. TX0156
Ashcroft Law Firm, LLC
919 Congress Ave.
Suite 1325
Austin, TX 78701
Telephone: (512) 547-7883
lreyes@ashcroftlawfirm.com

Michael J. Sullivan, *admission pending*
Ashcroft Law Firm, LLC
200 State St., 7th Floor
Boston, MA 02109
Telephone: (617) 573-9400
msullivan@ashcroftlawfirm.com

*Attorneys for Filipp Sergeevich Adonyev*
